IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

**Alexandria Division**

| | |
|---|---|
| _____ ) | |
| EPLUS TECHNOLOGY, ) | |
| INCORPORATED, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 05-0276 |
| ) | |
| NATIONAL RAILROAD PASSENGER ) | |
| CORPORATION, <u>et al.</u>, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

**<u>MEMORANDUM OPINION</u>**

This matter comes before the Court on Defendant National Railroad Passenger Corporation's Motion to Dismiss and Defendant Office of the Inspector General's Motion to Dismiss. <u>See</u> Fed. R. Civ. P. 12(b)(6). Plaintiff filed suit against Defendants alleging breach of contract, breach of implied covenant of good faith and fair dealing, tortious interference with contract, and tortious interference with prospective business. Defendants seek dismissal of Plaintiff's Amended Complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

Plaintiff is a Virginia corporation that sells computers and computer related equipment and services. Defendant National Railroad Passenger Corporation (Amtrak) is a corporation created by federal statute. 49 U.S.C. § 24101 (2000). Amtrak's principal

place of business is in the District of Columbia, and Amtrak is a citizen of the District of Columbia. 49 U.S.C. 24301(b). Defendant Office of the Inspector General (OIG), is an office within Amtrak created by federal statute. 5 U.S.C. app. § 8G. Jurisdiction is conferred on this Court by 28 U.S.C. § 1332(a), because the amount in controversy exceeds $75,000 and the parties are citizens of different states.

Plaintiff's Amended Complaint contains factual allegations regarding two alleged contracts between Plaintiff and Amtrak. Plaintiff first alleges the existence of a 2001 contract between Plaintiff and Amtrak for the purchase of new computer servers eligible for manufacturer maintenance (the Server Contract). Plaintiff next alleges the existence of a 2002 contract between Plaintiff and Amtrak for a nationwide wireless project requiring Amtrak to purchase products and services from Plaintiff (the Wireless Contract). While Defendants appear to admit the existence of the Server Contract, they clearly dispute the existence of the Wireless Contract.

Plaintiff claims the following facts regarding the Server Contract. First, Plaintiff properly performed under the Server contract by delivering new computer servers eligible for manufacturer maintenance. Second, a maintenance technician, employed by the manufacturer of the computer servers (a third party in this action), informed Amtrak that the computer servers

it had purchased from Plaintiff were used and, therefore, ineligible for manufacturer maintenance. Third, OIG initiated an investigation into Plaintiff's performance under the Server Contract based on the statements of the manufacturer's maintenance technician. Fourth, OIG directed Amtrak to cease doing business with Plaintiff pending the results of its investigation.

Plaintiff claims the following facts regarding the Wireless Contract. First, in April 2002 Plaintiff was involved in a competitive bid to win a national wireless project with Amtrak (the Wireless Contract). Second, the winner of the Wireless Contract was to provide wireless products and services to Amtrak worth an estimated $600,000 to $1,000,000. Third, Amtrak awarded Plaintiff the Wireless Contract because it was the lowest bidder. Fourth, Plaintiff tried to perform under the Wireless Contract by issuing purchase orders to Amtrak for wireless products and services. Fifth, Amtrak refused to perform under the Wireless Contract because OIG prohibited it from conducting any business with Plaintiff pending the OIG investigation. Sixth, Plaintiff tried to resolve any and all disputes with OIG regarding the Server Contract, but was not permitted to do so.

Based on these allegations, Plaintiff filed the present four count Amended Complaint, which Defendants contest through their individual motions to dismiss. In Count One, breach of contract,

Plaintiff alleges that Amtrak breached the Wireless Contract by refusing to purchase wireless products and services from Plaintiff. In Count Two, breach of implied covenant of good faith and fair dealing, Plaintiff alleges that Amtrak and OIG breached an implied covenant of good faith and fair dealing by not allowing Plaintiff to address the OIG investigation of the Server Contract and allowing Plaintiff to bid for the Wireless Contract while Defendants knew that they would not contract with Plaintiff. In Count Three, tortious interference with contract, Plaintiff alleges that OIG tortiously interfered with the Wireless Contract by ordering Amtrak, without justification, to cease doing business with Plaintiff. In Count Four, tortious interference with prospective business advantage, Plaintiff alleges that OIG tortiously interfered with Plaintiff's ability to obtain future Amtrak contracts by ordering Amtrak, without justification, to cease doing business with Plaintiff.

When deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), courts must review all well plead allegations contained in a plaintiff's complaint to determine whether such allegations could possibly entitle the plaintiff to the relief it seeks. Migdal v. Rowe Price-Fleming Int'l, Inc., 248 F.3d 321, 325-26 (4th Cir. 2001). While courts must view the allegations contained in a plaintiff's complaint in the light most favorable to the plaintiff, E. Shore Mkts., Inc. v. J.D. Assoc. Ltd.

P'ship, 213 F.3d 175, 180 (4th Cir. 2000), courts need not credit conclusory legal terms and allegations that are not reasonably supported by factual allegations. Taubman Realty Group Ltd. P'ship v. Mineta, 320 F.3d 475, 479 (4th Cir. 2003); Young v. City of Mt. Ranier, 238 F.3d 567, 577 (4th Cir. 2001).

Under Virginia law, "[t]he elements of a breach of contract action are (1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation." Filak v. George, 267 Va. 612, 619 (2004). A legally enforceable obligation, or contract, requires that there be "acceptance of an offer ... as well as valuable consideration." Montagna v. Holiday Inns, Inc., 221 Va. 336, 346 (1980) (citation omitted). A request for bids is not an offer, rather the bid itself is an offer, which creates no right until it is accepted by the offeree. Monk v. Va. Dep't of Transp., 34 Va. Cir. 374, 376 (Va. Cir. Ct. 1994); 1 Richard A. Lord, Williston on Contracts § 4:10 (4th ed. 1990).

As to Count One of its Amended Complaint, Plaintiff fails to state a claim for breach of contract against Amtrak because it does not allege acceptance of an offer. See Montagna, 221 Va. at 346 (holding that a valid contract requires acceptance of an offer). While Plaintiff claims it was the lowest bidder and Amtrak awarded it the Wireless Contract, the Amended Complaint

5

does not contain factual allegations that Amtrak ever accepted Plaintiff's bid for the Wireless Contract. See Young, 238 F.3d at 577 (holding that the presence of conclusory terms in a complaint does not insulate it from dismissal when the facts alleged cannot support the charges contained in the complaint). Rather, Plaintiff states in its Amended Complaint that when it issued purchase orders to Amtrak upon its belief that it had been awarded the Wireless Contract, Amtrak expressly rejected them and refused to conduct further business with Plaintiff pending the OIG investigation. Plaintiff's Amended Complaint merely alleges that Amtrak solicited offers for the Wireless Contract, Plaintiff submitted an offer to Amtrak, and Amtrak rejected Plaintiff's offer based on the OIG investigation of the Server Contract. These factual allegations do not state a claim for breach of contract, because the essential elements of a contract are not alleged in the Amended Complaint.

As to Count Two of Plaintiff's Amended Complaint, Plaintiff fails to state a claim for breach of implied covenant of good faith and fair dealing by Amtrak because it has failed to plead a valid contract. While Virginia law recognizes a contractual duty of good faith and fair dealing, Va. Vermiculite, Ltd. v. W.R. Grace & Company-Connecticut, 156 F.3d 535, 542 (4th Cir. 1998), a breach of that duty only creates a claim for breach of contract. Joyce v. Lincoln Nat'l Life Ins. Co., 845 F. Supp. 353, 355 (E.D.

6

Va. 1993) (stating that there is no independent cause of action for breach of implied covenant). Where, as here, there is no allegation of a valid contract between the parties, there can be no breach of a duty that can only exist pursuant to a contract.

With regards to its claims against the OIG in Counts Two, Three, and Four; Plaintiff fails "to state a claim upon which relief can be granted." See Fed. R. Civ. P. 12(b)(6). The OIG is a unit or department within Amtrak. 5 U.S.C. app. § 8G(b). It was established by and is maintained by the chairperson of the Amtrak Board of Directors. See id.; 2004 List of Designated Federal Entities and Federal Entities, 70 FR 4157, 4158 (2005). The Amtrak Inspector General is appointed by and is under the supervision of the chairperson of the Amtrak Board of Directors. 5 U.S.C. app. § 8G(c), (d). Therefore, because OIG exists solely within Amtrak's corporate structure and reports directly to the chairperson of Amtrak's Board of Directors, it is not a separate entity that may be sued in its own name. See Blackmar v. Guerre, 342 U.S. 512, 514-15 (1952).

Even if OIG were an independent entity that could be sued in its own name, Plaintiff fails to state a claim against OIG upon which relief can be granted. See Fed. R. Civ. P. 12(b)(6). As noted above, Plaintiff fails to state a claim for breach of implied covenant of good faith and fair dealing because it fails to allege that a valid contract existed between the parties that

7

could give rise to such a duty. Va. Vermiculite, 156 F.3d at 542 (holding that the duty of good faith and fair dealing is a contractual duty). Plaintiff's claims of tortious interference with contract fails because Plaintiff has not alleged the existence of a valid contractual relationship between itself and Amtrak. See Century-21 v. Elder, 239 Va. 637, 641 (1990) (holding that the first element in a prima facie case of tortious interference with contract is the existence of a valid contractual relationship). Likewise, Plaintiff's claim of tortious interference with prospective business advantage fails because Plaintiff has not alleged the existence of a valid business expectancy. Krantz v. Air Line Pilots Assoc., 245 Va. 202, 205-06 (1993) (holding that the first element in a prima facie case of tortious interference with prospective business advantage is the existence of business expectancy). Plaintiff admits in its Amended Complaint that Amtrak informed Plaintiff that it was not going to do further business with Plaintiff pending the OIG investigation.

An appropriate Order shall issue.

/s/
_____
CLAUDE M. HILTON
UNITED STATES DISTRICT JUDGE

Alexandria, Virginia
November 28, 2005